**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

John W. Ferron,

       Plaintiff,

-V-

                                      Case No. 2:06-cv-00453
                                      Judge Michael H. Watson

Echostar Satellite, LLC, et al.,

       Defendants.

### OPINION AND ORDER

Plaintiff in this diversity action asserts claims under the Ohio Consumer Sales Practices Act ("CSPA"), Ohio Rev. Code § 1345.12, and the Ohio Electronic Mail Advertising Act ("EMAA"), Ohio Rev. Code § 2307.64. This matter is before the Court on the motion for summary judgment filed by defendant Hydra Media Group, Inc. ("Hydra") (Doc. 130). For the reasons that follow the Court grants Hydra's summary judgment motion.

### I. Facts

Plaintiff John W. Ferron is an attorney who lives and practices law in the State of Ohio. He saves email advertisements and then files lawsuits arguing the emails violate Ohio law. Ferron estimates he has saved about 45,000 email advertisements over a six month period.

The instant lawsuit concerns emails Ferron received which advertised the satellite dish services of Dish Network. Ferron has indicated he visited about twelve

satellite dish websites and purposely provided his email addresses to those sites.  He

filed this action after he collected a large number of satellite dish email advertisements.

It is undisputed that defendant Hydra does not supply satellite dish services.

Moreover, Hydra has never created any email advertisements for satellite dish services.

It is also undisputed that Hydra has never sent Ferron any emails advertising satellite

dish services.

Hydra acts as a service that connects satellite dish service retailers with

companies that advertise by email.  The retailers create the advertisements.  Hydra

then stores the advertisements on its database.  Other companies then access Hydra's

database and send the advertisements to consumers by email.  In short, Hydra does

not create or send email advertisements.

## II. Summary Judgment

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c),

which provides in pertinent part:

> The judgment sought shall be rendered if the pleadings, the discovery and
> disclosure materials on file, and any affidavits show that there is no
> genuine issue as to any material fact and that the movant is entitled to
> judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if

the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Summary judgment

is appropriate, however, if the opposing party fails to make a showing sufficient to

establish the existence of an element essential to that party's case and on which that

party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322

(1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting

Matsushita, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III. Discussion

Hydra advances three arguments in support of its motion for summary judgment. First, Hydra maintains it is exempt from Ferron's CSPA claims under Ohio Rev. Code § 1345.12 because it did no more than disseminate information.  Second, Hydra contends Ferron's EMAA claims against it fail because it never sent any emails to him. Lastly, Hydra argues that Ferron's EMAA claims are, in any event, preempted by the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C. §§ 7701 *et seq.*  The Court will address these arguments *seriatim.*

### A. CSPA exemption

Hydra first argues that it is entitled to summary judgment on Ferron's CSPA claims because it only disseminated information within the meaning of the CSPA, and is therefore exempt from liability.  The Ohio Revised Code provides in pertinent part:

> Sections 1345.01 to Section 1345.13 of the Revised Code do not apply to:
> . . . .
> (B) A publisher, broadcaster, printer, or other person engaged in the dissemination of information or the reproduction of printed or pictorial matter insofar as the information or matter has been disseminated or reproduced on behalf of others without knowledge that it violated sections 1345.01 to 1345.13 of the Revised Code. . . .

Ohio Rev. Code § 1345.12.

Ferron contends Hydra is not exempt because it was paid to deliver customers to E-Management and Dish Nation.  Ferron explains that in this sense, Hydra's role differs from the traditional publisher which receives a flat fee for an advertisement run in its newspaper or magazine.  In contrast, Hydra is paid for each consumer who contacts E-Management or Dish Nation as a result of the email advertisements sent by third-parties.

Ferron cites no authority for the proposition that the exemption provision draws such a distinction.  Most significantly, nothing in the text of Ohio Rev. Code § 1345.12 suggests that the applicability of the exemption turns on how the publisher is paid.  That in this instance e-commerce differs from traditional printed media in this regard is not a sufficient basis for foreclosing the availability of the statutory exemption.  Here, the undisputed facts show that Hydra did not create or send the email advertisements.  As such, Hydra falls squarely within the role of a disseminator of information under § 1345.12.  Consequently, the Court rejects Ferron's argument that Hydra does not qualify for the exemption.

Ferron also argues Hydra cannot satisfy the statute's second requirement that it was "without knowledge that it violated sections 1345.01 to 1345.13 of the Revised Code."  Ohio Rev. Code § 1345.12.  In support of this assertion, plaintiff relies on the fact that he served Hydra a copy of the complaint in this case on June 14, 2006.

Hydra argues that knowledge of Ferron's complaint does not equate to knowledge of violation of the CSPA.  The Court agrees.  Ferron has yet to demonstrate any such violation.  Furthermore, in his affidavit, Hydra's Chief Marketing Officer, Adam

Walker, expressly disavows knowledge of any violation of the CSPA.  Walker's statement remains uncontroverted.

Based on the above, the Court finds as a matter of law that Hydra is only a disseminator of information without knowledge of any violation of the CSPA.  As a result, Hydra is entitled to summary judgment in its favor on Ferron's CSPA claims.

## B.  Applicability of EMAA

Hydra next argues that it is entitled to summary judgment on Ferron's EMAA claims because it did not transmit, or cause to be transmitted, any emails to him.  The EMAA provides in part as follows:

> Except as otherwise provided in division (B)(3) of this section, a person that transmits or causes to be transmitted to a recipient an electronic mail advertisement shall clearly and conspicuously provide to the recipient, within the body of the electronic mail advertisement, both of the following:
>
> (a) The person's name and complete residence or business address and the electronic mail address of the person transmitting the electronic mail advertisement;
>
> (b) A notice that the recipient may decline to receive from the person transmitting or causing to be transmitted the electronic mail advertisement any additional electronic mail advertisements and a detailed procedure for declining to receive any additional electronic mail advertisements at no cost. The notice shall be of the same size of type as the majority of the text of the message and shall not require that the recipient provide any information other than the receiving address.

Ohio Rev. Code § 2307.64.

Ferron acknowledges Hydra did not send him any email advertisements.  Ferron maintains, however, that Hydra may still be liable under the EMAA because it "caused" emails to be sent to him.

The EMAA does not define the term "causes to be transmitted.  Moreover, it

appears that Ohio courts have yet to interpret the EMAA.

Given that the EMAA is a remedial statute, the Court must interpret its terms

broadly. *See Elder v. Fischer*, 218 Ohio App.3d 209, 218 (Ohio App. 1 Dist. 1998).

The federal criminal wire fraud statute, 18 U.S.C. § 1343 contains the phrase, "causes

to be transmitted." The Sixth Circuit has broadly interpreted the phrase as follows:

> The operative language of section 1343 requires only that a person
> "transmits or causes to be transmitted . . . any writings, signs, signals,
> pictures, or sounds for the purpose of executing such scheme. . . ."
> (Emphasis supplied.) Similar operative language is contained in the
> analogous mail fraud statute, 18 U.S.C. s 1341. This similarity has been
> held to require that the sections be interpreted with equal breadth. United
> States v. Calvert, 523 F.2d 895, 903 (8th Cir. 1975), Cert. denied, 424
> U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314, 98 L.Ed. 435 (1976). We agree
> with this conclusion. Thus the language of the Supreme Court in Pereira
> v. United States, 347 U.S. 1, 8-9, 74 S.Ct. 358, 363 (1954), is applicable
> here:

> Where one does an act with knowledge that the use of the mails will
> follow in the ordinary course of business, or where such use can
> reasonably be foreseen, even though not actually intended, then he
> "causes" the mails to be used.

> See United States v. Talbott, 590 F.2d 192 (6th Cir. 1978).

*United States v. Calandrella*, 605 F.2d 236, 253 (6th Cir. 1979), *cert. denied*, 444 U.S.

991 (1979). The Court finds the EMAA's cause requirement is subject to the same

interpretation.

Hydra's role in the transmission of the emails Ferron received was limited. Hydra

did not itself create the advertisements or send the emails Ferron received. Rather,

Hydra stored advertisements on its website for use by others, who would send the

advertisements to consumers by email. Despite Hydra's limited involvement, however,

the Court cannot say as a matter of law that Hydra did not "cause" the emails to be

transmitted within the meaning of the EMAA. Specifically, a reasonable trier of fact

could find that Hydra could have foreseen the transmission of the emails which plaintiff

received when Hydra agreed to host the advertisements on its website. The Court

therefore declines to grant summary judgment on the basis that the EMAA does not

apply to Hydra.

### C. Preemption of EMAA claims

Hydra further asserts that even if it could be held liable under the EMAA, it is still

entitled to summary judgment because the federal CAN-SPAM Act preempts Ferron's

EMAA claims. Ferron avers his EMAA claims are not preempted by the CAN-SPAM

Act because the EMMA prohibits email senders from providing false and deceptive

information about their names and addresses. The CAN-SPAM Act's preemption

provision states as follows:

> This chapter supersedes any statue, regulation, or rule of a State or
> political subdivision of a State that expressly regulates the use of
> electronic mail to send commercial messages, except to the extent that
> any such statute, regulation, or rule prohibits falsity or deception in any
> portion of a commercial electronic mail message or information attached
> thereto.

15 U.S.C. § 7707(b)(1). Thus, the plain language of the Act provides for preemption of

state laws which expressly regulate email, but excepts from preemption state laws

which prohibit falsity or deception. To determine the scope of the preemption, the Court

must examine the intended meaning of "falsity or deception."

The leading case on this issue is *Omega World Travel, Inc. v. Mummagraphics,*

*Inc.,* 469 F.3d 348 (4th Cir. 2006). In *Omega,* the defendant operated websites

dedicated to fighting spam email. The plaintiffs sent the defendant numerous

unsolicited email advertisements. The emails allegedly contained several inaccuracies. The defendant contacted the plaintiffs and threatened to file a lawsuit against them seeking at least $150,000 in statutory damages unless they immediately paid the defendant $6,250 to settle the matter. When the plaintiffs failed to pay the defendant, it posted accusations against them on one of its anti-spam websites. In response, the plaintiffs filed an action against the defendant asserting defamation, copyright and trademark infringement, and unauthorized use of a likeness. The defendant raised counterclaims under the CAN-SPAM Act and Oklahoma statutes which regulated email. The plaintiffs moved for summary judgment, arguing, *inter alia,* that the CAN-SPAM Act preempted the defendant's Oklahoma statutory claims. The district court agreed and dismissed the defendant's counterclaims. The Fourth Circuit affirmed, holding that the defendant's state statutory claims were preempted by the CAN-SPAM Act. *Omega,* 469 F.3d at 359.

The court in *Omega* began its discussion by acknowledging the presumption against preemption, and the principle that the intent of Congress is the lynchpin of preemption analysis. *Id.* At 352. The court then undertook to interpret the key terms of the CAN-SPAM Act's exception to preemption: "falsity or deception." *Id.* At 354. Relying on the maxim, *noscitur a sociis* (a word is generally known by the company it keeps), the court in *Omega* concluded that the coupling of "falsity" with "deception" indicated Congress intended "falsity" to equate with torts involving misrepresentations as opposed to mere errors. *Id.* The court found this interpretation was reenforced by the CAN-SPAM Act provision that creates a civil cause of action, the title of which refers to email header information which is *materially* false or *materially* misleading. *Id.*

The *Omega* court also noted that the CAN-SPAM Act was designed to strike a balance between permitting a legitimate and efficient means of commercial advertising and the need to curb its abuse. *Id.* Furthermore, the court observed that Congress was concerned with state laws regulating email which created a jumble of different liability standards and requirements. *Id.* At 355. In response, Congress created a national standard for email advertisements. *Id.* The CAN-SPAM Act standard, however, does not reach emails which contain mere isolated errors, but instead requires a showing of intentional and misleading falsity. *Id.* Against this backdrop, the court in *Omega* concluded that the challenged emails could not be actionable under the Oklahoma statutes "because allowing a state to attach liability to bare immaterial error in commercial e-mails would be inconsistent with the federal Act's preemption text and structure, and, consequently, with a fair understanding of congressional purpose." *Id.* At 359 (internal quote omitted).

To date, *Omega* remains the only circuit court decision fairly addressing preemtion of state law claims under the CAN-SPAM Act. District court decisions since *Omega* have either followed or at least consulted it. *See, e.g., Ferguson v. Quinstreet, Inc.*, No. C07-5378RJB, 2008 WL 3166307, at *8-9 (W.D. Wash. Aug. 5, 2008); *Kleffman v. Vonage Holdings Corp.*, No. CV 07-2406GAFJWJX, 2007 WL 1518650, at * 3 n.1 (C.D. Cal. May 23, 2007); *Gordon v. Virtumundo, Inc.*, No. 06-0204-JCC, 2007 WL 1459395, at *11-12 (W.D. Wash. May 15, 2007).

This Court agrees with the reasoning of *Omega*. Permitting states to enforce laws which impose liability for email advertisements which contain only inaccuracies would thwart the goal of Congress in enacting the CAN-SPAM Act.

Turning to the instant case, the plain text of Ohio's EMAA creates a claim for the mere failure to include certain information in an email advertisement.  Furthermore, in its summary judgment motion, Hydra specifically challenges Ferron's evidence on this issue.  Hydra asserts, "Ferron has no evidence related to email name and address information that would support a fraud claim."  Motion for summary judgment (Doc. 130) at 13.  Ferron's response is: "Plaintiff's Second Amended Complaint clearly alleges that Plaintiff's EMAA claims are based upon '**falsity or deception**' in the emails sent by Defendant and others."  Memorandum in opposition (Doc. 141) at 12 (emphasis in original).  Ferron's reliance on the pleadings is, however, wholly insufficient to withstand summary judgment.  Fed. R. Civ. P. 56(e)(2).  Thus, Hydra is entitled to summary judgment in its favor as a matter of law on Ferron's claims under the EMAA.

## IV.  Disposition

Based on the above, the Court **GRANTS** defendant Hydra's motion for summary judgment  (Doc. 130).  Accordingly, the Court **DISMISSES** all of Ferron's claims against Hydra with prejudice.

The Clerk shall remove Doc. 130 from the Court's pending motions list.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT